FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 JUN 24 AM 9: 13

CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-060 |
| | ) | |
| JOHN FERNANDO SHEPPARD | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant John

Fernando Sheppard of Possession of 50 Grams or more of Cocaine Base, Possession of a

Firearm in Furtherance of a Drug Trafficking Offense, and Possession of a Firearm by a

Prohibited Person. The matter is now before the Court on Defendant's motion to suppress

all evidence of contraband found during the search of the premises located at 2021 3rd

Avenue in Dogwood Terrace Apartments, in Augusta, Georgia. (Doc. no. 14). For the

reasons developed below, the Court **REPORTS** and **RECOMMENDS** that the motion to

suppress be **DENIED**.[1,2]

---

[1] Although Defendant asked for an evidentiary hearing (doc. no. 14, p. 3), based on
the papers filed, the Court finds no reason for holding one. That is, the decision to grant or
deny a request for an evidentiary hearing on a motion to suppress is left to the Court's
discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000); United States
v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (per curiam). "[A] criminal defendant has no
absolute or presumptive right to insist that the district court take testimony on every motion."
United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of a motion for
evidentiary hearing on motion to suppress) (citation omitted). A district court should grant
a request for an evidentiary hearing when the moving papers, including the affidavits, are
"sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude
that a substantial claim is presented." United States v. Richardson, 764 F.2d 1514, 1527

## I.    FACTS[3]

On November 14, 2007, pursuant to a search warrant signed by a Richmond County Magistrate Judge, law enforcement officials entered the premises located at 2021 3rd Avenue in Dogwood Terrace Apartments ("2021 3rd Avenue"), a residence leased by Defendant's cousin. The law enforcement officials seized from a bedroom occupied by Defendant, *inter alia*, one loaded 9 millimeter semi-automatic pistol (later determined to be stolen) and baggies containing 82 grams of cocaine base that are the subject of the instant indictment. (Doc. no. 14, p. 1; doc. no. 15, pp. 1-2). Richmond County Investigator Paul Godden ("Inv. Godden") signed the affidavit in support of the search warrant. (Doc. no. 15, Ex. 1 (*hereinafter* "Aff.")). As described in more detail below, in that affidavit, Inv. Godden details information collected during investigations involving the burglary of a firearms dealer, a separate shooting incident where Defendant was a suspect, information provided by two separate sources that Defendant was located at 2021 3rd Avenue and in possession of stolen firearms, and the Richmond County Sheriff's Office ("RCSO") Intelligence information that Defendant had taken the role of leader of the Sheppard Family Drug

---

(11th Cir. 1985) (quoting United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972)).

Here, as discussed *infra*, the moving papers do not establish that a substantial claim is presented.

[2]Defendant originally filed a preliminary motion to suppress which did not comply with the specificity requirements of Loc. Crim. R. 12.1. (Doc. no. 11). Because he subsequently filed the particularized motions discussed herein, the Court **REPORTS** and **RECOMMENDS** that the preliminary motion be deemed **MOOT**.

[3]The facts are based on the information in Defendant's particularized motion to suppress, including Defendant's affidavit, and the government's response thereto. (Doc. nos. 14, 15).

Operation ("Sheppard Organization"). The affidavit also includes information about the violent history of the Sheppard Organization.

In the affidavit, Inv. Godden notes that on October 11, 2007, Shooters, an indoor firing range and gun store located at 1025 Patriots Way, Augusta-Richmond County, Georgia, was burglarized. (Aff., p. 1). During this burglary, seven (7) handguns and rifles were taken. (Id.). Inv. Godden further notes that on October 12, 2007, Jumor Sheppard, Defendant's cousin, called a RCSO undercover officer and advised the undercover officer that he had several Glock pistols for sale.[4] (Id.). According to Inv. Godden, these firearms described by Jumor Sheppard matched the description of four (4) Glock pistols stolen during the October 11th burglary of Shooters.[5] (Id.).

Next, Inv. Godden provides that on November 4, 2007, Investigators Brandon Beckman and Allison Godden of the RCSO Violent Crimes Section were called to investigate a shooting incident in which Defendant was a suspect. (Id.). During the course of that investigation, two (2) firearms - a Glock Model 22 (Ser. # LGN 563) and a Colt .45 Officer's Model (Ser. # SF02188E) that were reported stolen in a burglary of Walden's Outdoor World - were recovered from a suspect vehicle involved in a vehicle pursuit. (Id. at 1-2).

Inv. Godden also states that on November 10, 2007, he received a call from Task

---

[4]Also according to Inv. Godden, approximately one month earlier, on September 9, 2007, Jumor Sheppard sold a stolen assault rifle and 50.1 grams of crack cocaine to a RCSO undercover officer. (Godden Aff., p. 1).

[5]Although the calls from Jumor Sheppard were recorded and a deal was set up, he failed to show and did not re-establish contact. (Id.).

Force Officer Jason Vinson of the RCSO/FBI CSRA Safe Streets Task Force informing Inv. Godden that an FBI reliable source had contacted the task force and had advised them that Defendant was "holed up" at 2021 3rd Avenue[6] with some stolen guns. (Id. at 2). In addition, Inv. Godden notes that on November 12, 2007, Inv. Allison Godden received a call from the victim of the shooting incident advising Inv. Allison Godden that the victim's sister had been to 2021 3rd Avenue and had seen Defendant with several guns that reputedly were stolen. (Id.).

The affidavit also provides that the RCSO Intelligence information indicates that Defendant had taken the role of leader of the Sheppard Organization in the Gilbert Manor/Olive Road Area. (Id.). Inv. Godden notes that Jumor Sheppard is a member of the "family operation." (Id.). Moreover, Defendant took the leadership role after his cousin William Thomas Sheppard was arrested and convicted of murder, and the death of the older cousin and de-facto leader of the Sheppard Organization, Ricardell Sheppard. (Id.). According to Inv. Godden, Ricardell Sheppard was killed while trying to ambush and kill a prosecution witness against William Thomas Sheppard. (Id.).

Finally, Inv. Godden states that although Defendant is not a convicted felon, he has been convicted of a misdemeanor and is thus precluded from owning, transferring or otherwise possessing firearms. (Id.).

Defendant was arrested by Richmond County authorities after the execution of the search warrant issued by a Richmond County Magistrate Judge, based on Inv. Godden's

---

[6]Inv. Godden's research revealed that the apartment at 2021 3rd Avenue is currently leased by Yolanda Sheppard, another of Defendant's cousins. (Id.).

4

affidavit, uncovered

> one loaded 9 millimeter semi-automatic pistol - later determined to be stolen - and baggies containing 82 grams of cocaine base. . . . A combined total of $1,329 in currency was found on Defendant's person, in his room, and in the pocket of a woman's jeans in the room. Additionally, two digital scales were found in the kichen, as were a number of zip-loc baggies.

(Doc. no. 15, p. 2).

## II.    ANALYSIS

### A.    Probable Cause Properly Established

Defendant argues that probable cause did not exist to support the issuance of a search warrant for 2021 3rd Avenue because the predicate facts provided in Inv. Godden's affidavit are insufficient to support a finding of probable cause. (Doc. no. 14, p. 2). Defendant contends:

> he did not 'become a suspect' on November 4, 2007 for an incident occurring in May of 2007; nor was he 'holed up' as a fugitive when he was on bond; nor was he in possession of stolen guns in the presence of a presumably hostile stranger on November 12, 2007.

(Id.). The government counters that the information received by Inv. Godden and other RCSO investigators during the investigations of the burglary of Shooters, the separate shooting incident in which Defendant was a suspect, and the information provided by the two separate cooperating sources, indicated that Defendant had a regular presence at 2021 3rd Avenue and was in possession of stolen firearms. Based on that information, and coupled with the fact that Defendant's criminal history precluded his possession of firearms, there was sufficient probable cause for the Richmond County Magistrate Judge to issue a warrant to search 2021 3rd Avenue. (Doc. no. 15, p. 2). The government has the better argument.

5

Whenever a search warrant application is presented to a judicial officer, the judicial officer must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit. . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." (citation omitted)). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). The Court is mindful, however, that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 241). Moreover, these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue.[7] United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). "[P]robable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts. . . ." Gates, 462 U.S. at 232.

---

[7] Notably, probable cause may be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959).

Also, sufficient information must be presented to the judicial officer to allow for the exercise of independent judgment; the judicial officer cannot simply ratify the conclusions of others. Gates, 462 U.S. at 239. However, common sense must be employed when reading the affidavit, United States v. Ventresca, 380 U.S.102, 108 (1965), and the Court is guided by the principle that the affidavit supporting a search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). A court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

Here, upon examination of the totality of the circumstances, the Court concludes that the Richmond County Magistrate Judge had a substantial basis for concluding that probable cause existed to issue the search warrant. Inv. Godden's affidavit recounts how the RCSO Intelligence information indicated that Defendant had taken the role of leader of the Sheppard Organization. (Aff., p. 2). The affidavit also provides information on the violent history of the Sheppard Organization. (Id.). Additionally, the affidavit explains that the day after a burglary of Shooters, Defendant's cousin - a known member of the Sheppard Organization - contacted an undercover officer in an attempt to sell 4 Glock pistols matching the description of pistols stolen during the burglary of Shooters. (Id. at 1). The affidavit also

provides that Defendant was a suspect in a recent shooting incident [8]; during the course of the shooting investigation, 2 firearms that had been reported stolen from a burglary of Walden's Outdoor World were recovered from a vehicle involved in the shooting investigation. (Id. at 1-2). In addition, the affidavit establishes that two separate individuals placed Defendant at 2021 3rd Avenue in possession of stolen firearms.[9] (Id. at 2).

Given all the information presented to the Richmond County Magistrate Judge - the information received by Inv. Godden and other RCSO investigators during the investigations of the burglary of Shooters, the separate shooting incident in which Defendant was a suspect, and the information provided by the two separate cooperating sources, indicated that Defendant had a regular presence at 2021 3rd Avenue and was in possession of stolen firearms - coupled with the fact that Defendant's criminal history precluded his possession of firearms, the Court **FINDS** that probable cause existed to support the issuance of the search warrant by the Richmond County Magistrate Judge.

---

[8] Defendant suggests in his motion to suppress that he did not "become a suspect" on November 4, 2007, for a shooting incident that occurred in May of 2007, and thus this predicate fact should not have been used as a basis for establishing probable cause to issue the challenged search warrant. (Doc. no. 14, pp. 2, 3). Notably however, Inv. Godden's affidavit does not state that Defendant "became a suspect" on November 4th; the affidavit simply provides that on November 4, 2007, Investigators Brandon Beckman and Allison Godden were conducting an investigation on "a shooting incident involving Johnnie Lee Bailey as a victim and [Defendant] as a suspect." (Godden Aff., p. 1). There is no indication when Defendant "became a suspect." In any event, the paragraph is not limited only to Defendant's status as a suspect in a shooting investigation; as described in the text above, the paragraph also details the recovery of stolen firearms.

[9] In fact, Defendant's own affidavit confirms his regular presence at the 2021 3rd Avenue apartment and corroborates the informants information about the same.

**B.     Good Faith Exception**

Even if the Court had determined that probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the "good-faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). However, under Leon, the good-faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon Court explained that the good-faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on the Richmond County Magistrate Judge's determination of probable cause. See id. at 913.

Under Leon, there are four scenarios under which the good-faith exception to the exclusionary rule would not apply. Id. at 923. The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Id. Nor does

9

the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid. Id.

Here, as the government notes (doc. no. 15, p. 4), Defendant has not alleged dishonest or reckless behavior, and nothing in the record points to any such behavior. Nor is there any suggestion or evidence that the Richmond County Magistrate Judge "wholly abandoned" his detached and neutral role in issuing the warrant. There is also nothing to suggest that the warrant was in any way "facially deficient" such that the executing officers could not reasonably presume its validity. Thus, unless the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable, the good faith exception could be applied in this case. See Leon, 468 U.S. at 923. However, as set forth above, there were multiple factors presented in Inv. Godden's affidavit that supported a finding of probable cause, including information collected during investigations involving the burglary of Shooters, a separate shooting incident in which Defendant was a suspect, information provided by two separate sources that Defendant was at 2021 3rd Avenue in possession of stolen firearms, and the RCSO Intelligence information that Defendant had taken the role of leader of the Sheppard Organization. The affidavit also includes information about the violent history of the Sheppard Organization. Accordingly, it was not unreasonable to believe that probable cause existed.

In sum, the Court **FINDS** that even if probable cause to support the issuance of the warrant had not been established, a position discredited above in Part II(A), the evidence discovered as a result of the execution of the contested search warrant would be admissible under the good-faith exception to the exclusionary rule set forth in Leon.

## III.    CONCLUSION

In conclusion, the Court finds that the search warrant issued by the Richmond County Magistrate Judge, authorizing the search of 2021 3rd Avenue, in Augusta, Georgia was supported by probable cause. Alternatively, the Court finds that even if probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the resultant search would be admissible under the good-faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). Therefore, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

SO REPORTED and RECOMMENDED this 24th day of June, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE